UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROL L. ROBINSON, | ) | CIV. 10-4173-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| vs. | ) | ORDER GRANTING MOTION TO |
| | ) | DISMISS AND MOTION FOR |
| PATRICK R. DONAHOE, | ) | SUMMARY JUDGMENT |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carol L. Robinson, brought this action against defendant,

Patrick R. Donahoe, in his capacity as Postmaster General, for claims of prior

and ongoing employment discrimination and retaliation based on her gender,

age, and past conduct of bringing employment-related claims against the

United States Postal Service (USPS). Robinson claims that she lost seniority

status, hours, wages, and other job benefits or privileges as a result of the

USPS's conduct. Docket 1. The USPS moves to dismiss the complaint because

it alleges that Robinson failed to exhaust her remedies and state a claim upon

which relief could be granted or, in the alternative, for summary judgment and

dismissal on the merits because there is no genuine dispute in material fact

that remains for trial. Docket 14. Robinson resists these motions. Docket 22.

For the following reasons, the court grants the motion to dismiss on certain

claims and summary judgment on all remaining claims.

# BACKGROUND

Viewed in the light most favorable to Robinson, the nonmoving party, the undisputed facts are as follows:

At the time that this motion was filed, Robinson was a 61-year-old female who lived in Sioux Falls, South Dakota, and who was a full-time regular (FTR) window clerk at the downtown Sioux Falls USPS station. Robinson has worked continuously for the USPS in different capacities since 1993.

In 1998, the USPS and the American Postal Workers Union entered into a labor agreement through which the parties removed language that required a clerk craft employee to begin a new seniority date[1] when voluntarily changing from full-time to part-time regular (PTR) status. In July of 1998, Robinson voluntarily changed from FTR status to a PTR employee. PTR employees have a different category of seniority than FTR or part-time flex clerks. Seniority dates are the marker or order by which USPS employees are able to bid on other USPS positions, take annual leave, and receive other benefits of their jobs.

In May of 2005, the two Sioux Falls USPS employees who were responsible for seniority dates, Sonja Volk and David Jones, changed Robinson's seniority date. Part of Volk's job was to maintain the seniority lists for the clerks in Sioux Falls, South Dakota. Jones was the human resources

_____

[1] Seniority dates are determined by the labor agreement between the union and the USPS. Seniority lists are published on a quarterly basis.

2

manager at the time. Volk and Jones changed Robinson's and another employee, Mary Waybright's, seniority dates to what they believed was consistent with the 1998 change to the labor agreement. Accordingly, Robinson's seniority date was changed from July 18, 1998, which was the date she switched from full-time to part-time, back to August 21, 1993, which was the date that Robinson began working for the USPS in Sioux Falls. Robinson claims the change was made on the eve of her earlier discrimination trial for the purpose of sabotaging her efforts in that case and reducing her damages.

The union filed a grievance in the late spring or early summer of 2005 related to Robinson's and Waybright's seniority dates. Robinson admits that she knew that the grievance was filed and that it related to her seniority date. The USPS and the union reached a grievance settlement on July 21, 2005. In the settlement, the parties agreed to return Robinson's seniority date from August 21, 1993, to July 18, 1998. The grievance acknowledged that the seniority date never should have been changed because that was not in compliance with the 1998 labor agreement. Robinson's seniority date officially reverted back on August 16, 2005. Both Robinson's and Waybright's seniority dates were corrected on the next quarterly clerk craft seniority list issued on September 28, 2005. The grievance settlement letter notes that both employees were copied on the union grievance settlement via inter office mail.

3

In the fall of 2006, the USPS determined that the PTR clerk positions in Sioux Falls needed to be realigned. USPS reports had shown that it was using too many Function 4 clerk hours given the work load volume at each location. Sioux Falls USPS management then proposed a plan to realign the clerk's hours, including Robinson's and other PTR employees, and the Postmaster agreed and made the changes. USPS says the changes were based on workflow at each location and the current staffing needs.

Robinson was given notice that her position would be abolished on September 25, 2006. Seniority was not considered in abolishing positions, but it was considered when new PTR positions were posted and bids were awarded for those new positions. Robinson successfully bid on a new PTR position where she would work thirty-two hours per week, working weekday afternoons and Saturday mornings at the main post office. Robinson's prior position was for thirty-three hours per week with shifts in the afternoon at the main post office. Five other clerks also were affected by the realignment.

Following the abolishment of her position in September of 2006, Robinson called her union representative to discuss the realignment. During that conversation, Robinson's union representative told her that her seniority date had reverted back to July 18, 1998, following the grievance settlement. Robinson said this was the first time she knew that her seniority date changed.

4

Soon after, Robinson contacted an Equal Employment Opportunity Commission (EEOC) counselor to discuss employment issues against the USPS.

On December 28, 2006, Robinson filed a complaint with the EEOC against the USPS for discrimination on the basis of age, gender, and retaliation for filing prior complaints with the EEOC.[2] Robinson attempted to amend her complaint twice. The first time was on July 12, 2007, when Robinson proposed to amend her complaint to include additional occurrences of ongoing retaliation as well as alleged discrimination against Robinson by the USPS for failing to hire her husband, Eugene Robinson. Robinson moved to amend her complaint a second time on August 21, 2007. In that motion, Robinson alleged that the USPS changed her personal identification number (PIN), which was required for job bidding and to make changes to benefits, and improperly designated job postings, which caused Robinson to be ineligible for these open positions.

The parties then began discovery in the EEO process. They also exchanged discovery as to the issues raised in Robinson's proposed

---

[2] In addition to this case, Robinson has filed a number of prior EEO complaints during her employment with the USPS. One of those claims resulted in a federal lawsuit in this district, which was filed in May of 2003 and involved claims of discrimination based on Robinson's perceived handicap and retaliation after not being selected for two positions within the USPS. *See Robinson v. Potter*, Civ. No. 03-4128 (D.S.D. 2003). In that case, the district court granted summary judgment against Robinson on her retaliation claim. Later, a jury found in favor of the USPS on Robinson's discrimination claims. The court's decision was affirmed by the Eighth Circuit Court of Appeals on October 3, 2006.

5

amendments to her complaint. Robinson eventually filed a motion to compel discovery in December of 2007. The USPS responded in a letter to the administrative law judge (ALJ). The USPS also moved for summary judgment shortly thereafter.

The ALJ issued his decision on the USPS's motion for summary judgment on September 30, 2008, and found in its favor. The decision did not address Robinson's proposed amendments to the complaint. The ALJ's determination was upheld by the EEOC Office of Federal Operations, including the ALJ's decision to decide the case without a hearing and to not consider the merits raised in the proposed amendments. Robinson's request for reconsideration of this decision was denied on September 17, 2010.

Eventually, the EEOC issued Robinson a right to sue letter on September 17, 2010. Robinson filed this action on December 21, 2010. Docket 1. The USPS now moves to dismiss or, alternatively, for summary judgment. Docket 14.

## DISCUSSION

### I.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. It is a rule " 'rooted in the unique nature of the jurisdictional question.' " *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413

(5th Cir. 1981)). Under a motion to dismiss based on lack of subject matter jurisdiction, the defendant may challenge either the plaintiff's complaint on its face or based on the factual truthfulness of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn*, 918 F.2d at 729 n.6. The plaintiff carries the burden of showing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted).

Under a 12(b)(1) motion "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. Accordingly, the existence of disputed material facts does not prevent the trial court from analyzing the merits of the jurisdictional claims, and no presumptive truthfulness must attach to the facts alleged in the complaint. *Id.*

### A.    Failure to Exhaust

First, the court must determine if it has the requisite subject matter jurisdiction to hear the case by deciding whether Robinson exhausted her administrative remedies before bringing suit in federal court. In particular, the court must examine whether Robinson contacted an EEO counselor within 45 days of the occurrence of any allegedly discriminatory conduct, as is required prior to filing suit. It is undisputed that for at least one act of discrimination,

related to Robinson's seniority date, she waited more than a year to contact an EEO counselor. Thus, the court will analyze whether there was sufficient reason to extend or toll the 45-day timeline.

"A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). Similarly, an "[e]xhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (citation omitted). "The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Id.* (citation omitted).

"An employee of a federal government agency who thinks that he or she has been discriminated against must consult a[n EEO] counselor prior to filing a complaint in order to try to informally resolve the matter." *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 949 (8th Cir. 2011) (quotations and citations omitted). The federal employee must contact an EEO counselor within 45 days of the date of the alleged discriminatory conduct. *Id.* An act of discrimination or retaliation occurred on the day it was alleged to have happened. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

8

The 45-day timeframe can be tolled, however, if "an employee can show that he was not notified of the time limits and was not otherwise aware of them, he or she may be absolved from any failure to comply with the 45-day filing deadline." *Wilkie*, 638 F.3d at 949. The 45-day time limit can also be extended if the employee can establish that "she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission." C.F.R. § 1614.105(a)(2).

The alleged discriminatory act at issue is the change to Robinson's seniority date. When Robinson knew or should have known about that change[3] is the issue at hand. USPS argues that no tolling or extension should apply because Robinson was aware that the union grievance was filed and was copied on the grievance settlement letter so she had firsthand knowledge that her seniority date changed. USPS also claims that Robinson bid on jobs after the change in her seniority occurred, and because the bid process relies on seniority dates, Robinson knew or should have known that her date had been changed. In contrast, Robinson contends that she did not receive any notice of

---

[3] There is no dispute that Robinson was aware of the 45-day reporting requirement of an alleged discriminatory or retaliatory act to an EEO counselor.

the change to her seniority until she spoke with the union representative about the abolishment of her work position in September of 2006. Docket 1 ¶¶ 20-23. Thus, she should be absolved from her failure to comply with the 45-day filing deadline because she was not notified of or otherwise aware of the change to her seniority date. The court finds that Robinson cannot establish that she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred.

Robinson did not contact an EEO counselor about this alleged discriminatory conduct until September 21, 2006—more than a year after the seniority date actually changed. Docket 15 at 17. Robinson does not dispute that she knew that the grievance that related to her and Waybright's seniority dates had been filed in the late spring or early summer of 2005. Thus, Robinson knew change was a possibility and that the matter would be resolved eventually. The grievance settlement letter that acknowledged that Robinson's seniority date would change was issued on July 21, 2005, and the change went into effect on August 16, 2005. Neither party disputes that Robinson and Waybright were copied on the grievance settlement and were to receive a carbon copy of the decision via inter office mail in July of 2005.

Moreover, it is undisputed that Robinson bid on different jobs within the USPS from June 17, 2005, through July 31, 2006, where her seniority date would be used to place bids. And Robinson acknowledges that if a USPS

10

employee wants to know their specific seniority date, it is not a secret and they may access their seniority date upon request. Although Robinson knew that her seniority date was subject to change, was copied on the grievance settlement, had access to her seniority date at all times, and actively bid on jobs requiring use of her seniority date, she still claims ignorance.

Even if Robinson did not have actual notice that her seniority date had been changed, she reasonably should have known that such a change could have occurred and should have checked her seniority date. The timeline will not be extended because the court cannot conclude that Robinson did not know and reasonably should not have known that the change occurred. Thus, Robinson has failed to prove the jurisdictional facts that the court needs to reassure itself that it has the requisite subject matter jurisdiction to preside over the ultimate question of whether Robinson's seniority change[4] was a discriminatory or retaliatory act. *See Osborn*, 918 F.2d at 730 (stating that when subject matter jurisdiction is attacked for a 12(b)(1) motion to dismiss "the plaintiff will have the burden of proof that jurisdiction does in fact exist."). Accordingly, this claim is dismissed.

---

[4] This alleged act can be considered, however, under the hostile work environment claim discussed below if Robinson can establish that an act that contributed to this claim occurred within 45 days of contacting an EEO counselor based on the "cumulative effect of individual acts" in a hostile environment claim. *See Wilkie,* 638 F.3d at 951.

### B.    Claims Not Raised in the Administrative Claim

USPS claims that Robinson improperly included a number of claims for discrimination in her complaint or response brief that were not raised or addressed in her EEOC complaint. For those reasons, the USPS asserts that these alleged incidents of discrimination or retaliation should be dismissed.

"The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Parisi*, 400 F.3d at 585. An administrative charge is "liberally construe[d]" for purposes of determining whether a plaintiff has exhausted the administrative remedies. *Id.* "But there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996). In the context of exhaustion of administrative remedies, a plaintiff is allowed to bring the claim that was specifically alleged, "along with allegations that are 'like or reasonably related' to that claim[.]" *Parisi*, 400 F.3d at 585 (quoting *Shannon*, 72 F.3d at 684) (citation omitted).

First, Robinson claims that an instance of discrimination occurred in 2008 when her FTR position was abolished due to an hours change. Second, Robinson states that she was retaliated against when her employer did not let her have a break or lunch on her shift prior to her deposition for this case.

12

These claims were not raised in this EEO complaint, in any of its subsequent amendments, or a new EEO complaint, and appear to have occurred after the ALJ made his determination on the underlying claims. Accordingly, these claims are not properly before the court, and Robinson has not exhausted her administrative remedies as to these charges.

Finally, Robinson claims that the USPS first changed her seniority date to a seemingly more favorable date on "the eve" of her prior discrimination trial intending to sabotage her efforts in that case and lessen her proposed damages to the jury. These allegations are not properly before the court because they occurred in 2005 and there is no evidence that Robinson contacted an EEO counselor within the 45-day window or otherwise exhausted her administrative remedies. Furthermore, any issue alleged in Robinson's current complaint that relates to Robinson's prior federal claim for discrimination that was resolved in 2005 is not relevant to this case and will be dismissed.

### C.    Standing

In her complaint, Robinson makes references to claims against the USPS by her husband, Eugene Robinson, and her coworker, Mary Waybright. The USPS argues that allegations brought on behalf of anyone other than Carol Robinson are not properly before the court because she lacks standing to bring claims on others' behalf.

13

" 'Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.' " *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982-83 (8th Cir. 2009) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Article III requires that there be a case or controversy at every stage of the litigation, and " '[f]ederal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case.' " *Id.* (quoting *Schanou v. Lancaster Cnty. Sch. Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir. 1995)). Standing, however, requires "a showing of injury in fact *to the plaintiff* that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

This case is not a class action or any other type of case where Robinson has brought a claim in any capacity other than on her own behalf. Even if the court views all of the allegations in the complaint as true, allegations that purport to represent the claim or injury of another person are dismissed because Robinson does not have standing to sue on his or her behalf.

## II.    Summary Judgment

USPS asserts that the court should grant summary judgment on the remainder of Robinson's claims because they fail on the merits. USPS claims that Robinson cannot establish a prima facie case for discrimination or

14

retaliation and that even if she could, she still fails to establish pretext or disprove USPS's nondiscriminatory or non-retaliatory explanations for the adverse employment actions.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910

15

(8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### A.    Age Discrimination

While the analysis for Robinson's age and gender discrimination claims will be similar, the court will analyze each in turn, starting with Robinson's allegation that the USPS discriminated against her based on her age in violation of the Age Discrimination in Employment Act (ADEA).

Where no "direct evidence of discrimination" is presented, an ADEA discrimination claim is analyzed "pursuant to the burden-shifting framework set forth in *McDonnell Douglas*[.]" *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A plaintiff must first establish his or her prima facie case. "In order to establish a prima facie case under the ADEA, [a plaintiff] must show: (1) [s]he is over 40; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action, and (4) substantially younger, similarly-situated employees were treated more favorably." *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012) (citation omitted).

16

If the prima facie case is established then "the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their actions. If the defendants satisfy their burden, the burden shifts back to [the plaintiff] to show the defendants' proffered reason was pretextual." *Thomas*, 483 F.3d at 528. The Eighth Circuit has reiterated that at this stage of the burden shifting test:

> To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason. . . . [T]he plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

*McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998)). Put another way, a plaintiff must show "that a discriminatory animus lies behind the defendants' neutral explanations." *Id.*

Robinson has failed to bring forth any evidence that would amount to direct evidence of discrimination based on her age. Accordingly, the court will analyze whether Robinson can make a prima facie case for age discrimination. It is not contested that Robinson was over the age of 40 and was qualified for her position or was meeting the USPS's legitimate business expectations in her job during the time period at issue in this case. Robinson claims that she experienced numerous adverse employment actions, including: "when she was not timely hired, had her seniority placement wrongfully manipulated, had her

17

work hours reduced, had her position abolished, and suffered under a hostile work environment created by her employer." Docket 22 at 16.

At this stage of the analysis, the court will analyze only those adverse employment actions that are relevant to this claim, not stale, or not otherwise barred by the 45-day EEO contact provision discussed previously. Thus, the only remaining adverse employment action that is related to Robinson's age discrimination claim is the reduction in work hours from the abolishment of her position in 2006. Even assuming that Robinson could establish the final factor of her prima facie case, that younger similarly situated employees[5] were treated more favorably, she ultimately fails to carry her burden and establish that the USPS's explanation for abolishment of her position was false or that it was merely pretext for age discrimination.

When examining the employer's articulated reason for the adverse employment action, the court's " 'inquiry is limited to whether the employer gave an honest explanation of its behavior.' " *Wilking*, 153 F.3d at 873 (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)). "Accordingly, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise,

---

[5] Because the court will analyze whether similarly situated employees outside of Robinson's protected class were treated differently under its pretext analysis, it will not repeat that analysis here.

fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Id.*

The USPS's stated reason for abolishing Robinson's previous position or changing her work hours in 2006 has generally remained static. The USPS conducted a study of the productivity of the Sioux Falls USPS locations and generated a report from that study in the early fall of 2006, which concluded that it was using too many clerk hours given the work load volume. Accordingly, the USPS determined that PTR clerk positions, like Robinson's, needed to be realigned based on the needs of each location. The changes made were based on workflow and the current staffing at each location. USPS supervisors met with the union in making the position realignments. Reduction in work force is a sufficient reason for the adverse employment decision and there is no evidence that USPS's stated reasons or actions were forbidden by law.

Therefore, the burden shifts back to Robinson to establish pretext. There are two ways that Robinson could demonstrate " 'a material question of fact regarding pretext.' " *Onyiah*, 684 F.3d at 716 (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011)). The first is that Robinson could establish that the USPS's stated reason for the adverse employment action "is unworthy of credence because it has no basis in fact[.]" *Id.* Second, Robinson could show pretext by persuading the court that the USPS's actions

19

were more likely motived by a discriminatory animus. *Id.* " 'Either route amounts to showing that a prohibited reason, rather than [the USPS]'s stated reason, actually motivated' " the adverse employment action. *Id.*

Robinson does not contest that the USPS conducted a study of its employees' hours based on the existing workload. Robinson also does not contest that the majority of her similarly situated co-workers had their schedules realigned, their locations changed, or began working fewer hours after realignment. Accordingly, Robinson cannot carry her burden and show that the USPS's explanation is not worthy of credence or is unsupported by fact. And the court will not second guess the USPS's decision to abolish Robinson's and others' positions based on evidence that it had a legitimate need to reduce costs and cut hours. *See Russell v. TG Mo. Corp.*, 340 F.3d 735, 746 (8th Cir. 2003) (stating that the court will not "sit as a 'super-personnel department' with the power to second-guess employers' business decisions.").

Robinson's only argument to rebut the USPS's articulated reason and establish pretext is that the USPS's reasoning was nothing but a smokescreen to hide the discriminatory actions against her. Robinson alleges that this is true because similarly situated employees who were younger than Robinson were able to work overtime hours even after the realignment or hours that were formerly worked by her were now worked by clerks from other areas.

20

The USPS acknowledges that five of its other clerks were affected by the 2006 realignment, including: Kerrie Hansen, Mary Waybright, Eden McGourty, Wilma Romeriem, and Rose Ahrendt. Docket 15 at 10-11. There is evidence that only one of those employees, Hansen, was substantially younger than Robinson. Following the realignment, Hansen's work schedule and hours changed, she is now working at a different station, and she received a total work hour reduction that was greater than Robinson's. Docket 15 at 11. Prior to her job abolishment, Robinson worked thirty-three hours a week in the afternoon at the main post office. After successfully bidding on a new position following realignment, Robinson worked thirty-two hours per week during weekday afternoons and Saturday mornings at the main post office. Robinson did not articulate sufficient evidence of how Hansen was similarly situated,[6] was treated more favorably than Robinson because Hansen was younger, or otherwise carry her burden of creating an inference of discrimination. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005) ("An employee's attempt to prove pretext . . . requires more substantial evidence than it takes to make a prima facie case, . . . because unlike evidence

---

[6] The court finds that this rationale is not applicable to the employees Robinson identifies because she failed to carry her "burden of proving that [s]he and the disparately treated [employees] were similarly situated in all relevant aspects." *McNary*, 535 F.3d at 770 (internal citations and quotations omitted).

establishing a prima facie case, evidence of pretext . . . and retaliation is viewed in light of the employer's justification.") (citations and quotations omitted).

Additionally, Robinson has not presented any evidence that age was ever discussed, referenced, or implied by a supervisor in her work environment—let alone that age was the but-for cause of her adverse employment action. *See Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011) ("At all times, the plaintiff retains the burden of persuasion to prove that age was the 'but-for' cause of termination."). All that is left of Robinson's claims are conclusory allegations. These bald allegations,[7] without citations to specific factual support in the record, are insufficient to carry Robinson's burden of showing that the USPS's stated reasons were pretext for discrimination. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 857 (8th Cir. 2012) ("A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact."). Because Robinson cannot meet her burden, summary judgment is granted in favor of the USPS on this claim.

---

[7] Robinson argues that she can establish pretext because the USPS failed to follow its own rules, regulations, and standard operating procedures and that the USPS provided false information. These arguments are unsupported by any evidence in the record before the court. Robinson also claims that the USPS had shifting explanations for its adverse employment actions against Robinson. "A change in an employer's legitimate, nondiscriminatory reason for firing an employee is probative of pretext only if the discrepancy is 'substantial.' " *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 957 (8th Cir. 2012) (citation omitted). Robinson has not established how the USPS's explanation has shifted throughout this process.

### B.      Gender Discrimination

Robinson also alleges that the USPS discriminated or retaliated against her based on her gender. Robinson does not have any direct evidence of gender discrimination, so the court also analyzes this claim under the *McDonnell Douglas* framework discussed above.

The court's analysis of Robinson's gender discrimination claim reaches the same result as Robinson's age discrimination claim—summary judgment is appropriate because Robinson cannot show that the USPS's stated reasons are unworthy of credence or that her gender was the real reason for the adverse employment action. This conclusion is particularly appropriate when there were no male employees working at Robinson's duty station throughout the majority of her term there. Accordingly, Robinson cannot establish any evidence that similarly situated male employees were treated more favorably than she was. Thus, she is unable to make a prima facie showing.

Robinson's arguments that her gender played a role in the USPS's adverse employment actions against her is unsupported by evidence and is insufficient, standing alone, to preclude summary judgment. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (citation omitted) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a

23

finding in the plaintiff's favor."). Summary judgment is granted in favor of the USPS on this claim.

### C.    Retaliation

Robinson claims that the USPS retaliated against her because she filed prior EEO complaints based on her gender and age. Title VII provides that it is "unlawful . . . for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To make a retaliation claim Robinson must establish "direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).

To establish a prima facie case of retaliation, Robinson must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1022 (8th Cir. 2011). If the employee can meet the prima facie case, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. Once the employer states a legitimate reason for the action then the burden shifts back to the employee to bring forth evidence of pretext. *Id.*

There is no dispute that Robinson engaged in protected activity when she made her prior EEO charges against the USPS. Robinson alleges two instances of adverse employment actions that are properly before the court that the USPS agrees could constitute adverse employment actions: the abolishment of her position in 2006 and changing Robinson's PIN number.[8] The court has already discussed in detail the abolishment of Robinson's position in 2006. Robinson's PIN claim is that the USPS changed her account PIN in order to prevent her from accessing job bids and other benefits or conditions of employment. Robinson alleges her PIN changed, she was unable to access her account to bid on other positions, and this caused her damage. Robinson argues that the USPS must have changed the PIN.

The issue then becomes whether Robinson can generate sufficient evidence to establish a causal connection between her protected activity and the alleged adverse employment actions by showing that the USPS's retaliatory motive played a part in the decision to change her PIN. *See Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739-40 (8th Cir. 2005) ("Evidence that gives rise to an inference of retaliatory motive on the part of the employer is sufficient to prove a causal connection.") (citations and quotations omitted).

---

[8] Robinson also claims that the USPS improperly classified a position that she applied for as a means of discrimination or retaliation against her. The court will not consider that claim because that claim was raised in another EEO complaint that is not before this court at this time.

The only evidence that Robinson brings forth to establish a causal connection between her adverse employment action and an inference of a retaliatory motive is that she brought prior EEO claims, her position was abolished, and that her PIN number changed. The majority of Robinson's prior EEO claims, however, were concluded by 2005. Robinson's position was abolished in the fall of 2006. Robinson alleges that her PIN number was changed sometime in 2007 after her initial EEO complaint had already been filed in this case. Thus, Robinson's only evidence of a causal connection is the temporal relation between Robinson's prior EEO activity and the adverse employment actions against her.

The Eighth Circuit recently discussed whether an employee could successfully establish the causal connection element of a prima facie case of retaliation when an eight-month gap occurred between the employee's protected activity and her adverse employment action. *Muor v. U.S. Bank Nat'l Ass'n*, 716 F.3d 1072, 2013 WL 2631169, at *6 (8th Cir. June 13, 2013). The court stated that "[t]his gap between the bulk of the alleged adverse employment actions and Muor's protected activity vitiates Muor's contention that the temporal proximity gives rise to an inference of retaliatory motive." *Id.* (citing *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011)). And as the Eighth Circuit stated in *Tyler*, the more time that passes between the employee's protected activity and the alleged retaliatory act, the weaker the

26

inference of retaliation becomes, and the court requires stronger evidence of causation. *Tyler*, 628 F.3d at 986.

Here, the temporal link between the events is not close enough to establish a causal connection between the protected activity and adverse employment actions against Robinson. Without any additional or stronger evidence of causation, Robinson cannot establish the third element of her prima facie showing of retaliation. Additionally, as analyzed in the prior discrimination sections, Robinson cannot establish that the USPS's stated reasons for the adverse employment action was false or show that retaliation was the real reason for the adverse employment actions. For these reasons, Robinson's claim of retaliation fails because Robinson cannot make her prima facie showing or carry her burden of creating an inference of retaliation or establish pretext. Accordingly, the USPS's motion for summary judgment is granted on this issue.

### D.    Hostile Work Environment

Robinson argues that the pattern of conduct at her workplace amounts to a hostile work environment claim against the USPS based on discriminatory and retaliatory motives. The Eighth Circuit has stated that the majority of hostile work environment claims have the following elements: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the

plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012) (quoting *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006)).

For a hostile work environment claim to be actionable, the alleged conduct must be so extreme and severe that it changes the terms and conditions of employment and creates an abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158 (8th Cir. 1999). The conduct must be both objectively and subjectively offensive. *Peterson v. Scott Cnty.*, 406 F.3d 515, 523-24 (8th Cir. 2005). In making its determination, a court may consider the following factors: (1) the frequency of the offending conduct; (2) its severity; (3) whether it was physically threatening or humiliating; and (4) whether it unreasonably interfered with work performance. *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 630 (8th Cir. 2005).

In her complaint, Robinson stated that "the USPS has continued to subject Plaintiff to an on-going pattern of discriminatory and retaliatory actions which have subjected Plaintiff to a hostile work environment." Docket 1 ¶ 55. Robinson claims that the USPS perpetuated a hostile environment by reducing her hours, manipulating her seniority, changing her PIN number, abolishing

her position, not hiring her husband at another USPS location, and other actions related to her prior EEO activity.

Robinson did not, however, bring forth any evidence that would create a genuine dispute of material fact that the actions of the USPS were linked or causally connected to any of Robinson's protected class statuses. Robinson also did not bring forth evidence in support of her claim that the actions of the USPS were so extreme, severe, or pervasive so as to affect a condition, privilege, or term of her employment. She did not submit evidence via affidavit or any other source, other than prior EEO claims or forms, beyond her own assertions that these negative employment actions occurred and occurred as a result of her membership in a protected class. That is insufficient to carry her burden on summary judgment. Accordingly, summary judgment is granted in favor of the USPS.

## CONCLUSION

Robinson's claim of discrimination based on the change to her seniority date is dismissed because she failed to exhaust her administrative remedies and contact an EEO counselor within the mandated timeframe. The court also dismisses other claims made on behalf of others or that were not raised in the EEO complaint. Finally, the court grants summary judgment in favor of the USPS on all of Robinson's remaining claims because Robinson cannot carry her burden to disprove the USPS's stated reasons for her adverse employment

actions, establish pretext, or otherwise create a genuine dispute in material fact. Accordingly, it is

ORDERED that the USPS's motion to dismiss (Docket 14) is granted as it pertains to the seniority date issue, standing, and other claims that were not raised in the administrative complaint.

IT IS FURTHER ORDERED that the USPS's motion for summary judgment (Docket 14) is granted as it pertains to Robinson's claims of age discrimination, gender discrimination, retaliation, and hostile work environment.

Dated July 12, 2013.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

30